**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Georgia Tsosie,<br><br>              Plaintiff,<br>vs.<br><br>United States of America,<br><br>              Defendant. | No. CV-18-00494-PHX-SPL<br><br>**ORDER** |

Plaintiff Georgia Tsosie, on behalf of her son (together, the "Plaintiffs"), initiated this action against Defendant United States of America (the "Government") alleging causes of action for negligence. (Doc. 8) The Defendant has moved to dismiss the Plaintiffs' claims against it (the "Motion"), arguing that (i) the Plaintiffs may not bring claims against the Government pursuant to the Federal Tort Claims Act ("FTCA"), and (ii) the Plaintiffs have failed to state a claim for which relief can be granted. (Doc. 38) The Court's ruling is as follows.

**I. Background**

Plaintiff Georgia Tsosie is the mother and natural guardian of N.C., who was born on March 3, 2015, in Chinle, Arizona. (Doc. 8 at 3) The Plaintiffs are members of the Navajo Tribe and are entitled to receive medical care at Chinle Health Care Facility ("Chinle Hospital"). (Doc. 8 at 3; Doc. 45 at 2) On April 14, 2015, Tsosie took N.C. to the emergency department of Chinle Hospital due to N.C. "running a fever and acting

fussy." (Doc. 8 at 3)  Three hours after arriving to the emergency department, and while still undergoing treatment, N.C. began experiencing "respiratory distress and stopped breathing."  (Doc. 8 at 3)  Thirty minutes passed before a definitive airway was established, which resulted in N.C. suffering an irreparable hypoxic brain injury due to the lack of adequate oxygenation to his brain.  (Doc. 8 at 3)  N.C. had no brain injuries prior to April 14, 2015.  (Doc. 8 at 3)

In 2014, Chinle Hospital entered into a contract with Medical Doctor Associates ("MDA"), a medical staffing agency, which allowed MDA to supply Chinle Hospital with emergency medicine service physicians.  (Doc. 38-1 at 27)  A contract order was drafted by Chinle Hospital, comprised of both a contract/purchase order[1] and a Performance Work Statement ("PWS") for emergency medicine service physicians, to cover the period between November 10, 2014 to September 30, 2015.  (Doc. 38-1 at 27)  Dr. Ralph Alving was a contract healthcare services provider that MDA hired to provide emergency medicine physician services to its clients, and Dr. Alving was one of the emergency medicine service physicians that was supplied to Chinle Hospital by MDA via the contract/purchase order.[2] (Doc. 38-1 at 27; Doc. 45 at 5)

The governing Indian Health Services agency policy requires that all "licensed independent practitioners and other practitioners who provide direct patient care shall be credentialed and privileged though the medical staff." (Doc. 45-13 at 4)  The PWS provided to Dr. Alving contained a contract provision (the "FTCA Clause") which stated that FTCA protection was extended to "Nonpersonal Service Contractors" if they provided services in an Indian Health Services facility to Indian Health Services beneficiaries. (Doc. 38-1 at 55) In light of this provision, MDA did not require Dr. Alving to carry malpractice insurance because MDA was under the impression that Dr. Alving's performance at Chinle Hospital would be covered under the FTCA.[3]

---

[1] The contract specifies that is it a "Nonpersonal Service task order."  (Doc. 38-1 at 33)

[2] Dr. Alving passed away in 2016.  (Doc. 45 at 3)

[3] Dr. Eric Ritchie is the current clinical director of Chinle Hospital who, after

As a result of the injury to N.C., the Plaintiffs filed a claim with Indian Health Services on April 10, 2017. (Doc. 8 at 2) Indian Health Services has not denied or acted upon the claim. (Doc. 8 at 2) Because Indian Health Services never responded, the Plaintiffs exercised their option to deem the claim denied and filed this action (the "Complaint") under the FTCA, alleging professional negligence in connection with the care of N.C. (Doc. 8 at 1–2) The Plaintiffs are seeking damages to compensate for N.C.'s injuries, additional damages, legal costs, and any other relief the Court may deem appropriate. (Doc. 8 at 4–5) In response, the Government moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 38 at 1)

## II. Legal Standard

A motion to dismiss for lack of subject-matter jurisdiction brought pursuant to Rule 12(b)(1) may facially attack the existence of subject-matter jurisdiction or may challenge the truth of the alleged facts that would confer subject-matter jurisdiction on the court. *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Courts are permitted to consider evidence to decide a factual attack on subject-matter jurisdiction. *Thornhill*, 594 F.2d at 733. The party asserting jurisdiction has the burden of proof to show that the Court has subject-matter jurisdiction. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Where a claimant lacks standing, the Court must dismiss the action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *Ervine v. Desert View Reg. Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint

---

learning about the current case, directed that the FTCA Clause be removed from the PWS. (Doc. 45-16 at 26–28)

3

for failure to state a claim under Federal Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacificia Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, and "are insufficient to defeat a motion to dismiss for failure to state a claim." *Id.*; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). A plaintiff need not prove the case on the pleadings to survive a motion to dismiss. *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012).

### III. Analysis

#### A. Claims Under FTCA

The Government filed the Motion arguing that the Complaint must be dismissed because Dr. Alving is not a federal employee within the meaning of the FTCA. The FTCA is a limited waiver of sovereign immunity making the Government liable to the same extent as a private person for certain torts of employees of the government acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); *Andrade ex rel. Goodman v. United States*, 2008 WL 4183011, at 4 (D. Ariz. Sept. 8, 2008). In the FTCA, the Government waives its immunity for negligent acts or omissions of any of its employees acting within the scope of their office or employment and provides subject-matter jurisdiction to the federal courts in suits against such employees. 28 U.S.C. § 1346(b)(1). The FTCA does not cover the acts of independent contractors; generally, the Government may not be held liable for employees of a party with whom it contracts for a specified performance. *Logue v. United States*, 412 U.S. 521, 531 (1973).

"Employee of the government" under the FTCA is defined as "officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. "Federal agency," is defined to include "the executive

departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671. The terms of a contract are not dispositive as to whether a party is an employee of the Government for purposes of the FTCA. *Gibbons v. Fronton*, 533 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).

A court will determine a party to be an employee of the Government for the purposes of the FTCA if the Government enjoys the power to control the detailed physical performance of the contractor or supervises the day-to-day operations of the contractor. *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (stating "[T]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor."). A contractor is considered to be an employee only if the government agency manages the details of the contractor's work or supervises his daily duties, but not if the government agency acts generally as an overseer. *Autery*, 424 F.3d at 956–57. Contractual provisions directing detailed performance generally do not abrogate the contractor exception, and the Government may fix specific and precise conditions to implement federal objectives without becoming liable for an independent contractor's negligence. *Autery*, 424 F.3d at 957; *United States v. Orleans*, 425 U.S. 807, 816 (1976).

First, the Plaintiffs admit that Chinle Hospital contracted with MDA for the purpose of staffing its facility, and the Plaintiffs identify MDA as "a private physician staffing company". (Doc. 45 at 5) Second, the Plaintiffs admit that Dr. Alving entered into a "Self-Employment Agreement" with MDA in which he agreed to provide "locum tenens services" to MDA's clients as an independent contractor. (Doc. 45-8 at 2, 4) Furthermore, the terms of the Self-Employment Agreement require MDA to "procure professional liability insurance coverage for [Dr. Alving] under MDA's group medical malpractice insurance policy." (Doc. 45-8 at 3)

However, the plain terms of the PWS executed between Chinle Hospital and Dr.

Alving provide that FTCA protections would be extended to him as a nonpersonal service contractor if he was providing services in an Indian Health Service facility. (Doc. 38-1 at 55) The Government now argues that this provision of the PWS is void because Chinle Hospital was not authorized to extend FTCA coverage through the FTCA Clause in the PWS. Separately, the Plaintiffs argue that even if Dr. Alving was not a federal employee as defined under the FTCA, he is still covered by the FTCA pursuant to 25 U.S.C. § 1680c(e)(1), which provides that "health care practitioners may, as part of the privileging process, be designated as employees of the Federal Government" for the purpose of 28 U.S.C. § 1346(b) "with respect to acts or omissions which occur in the course of providing services to eligible individuals as a part of the conditions under which such hospital privileges are extended." 25 U.S.C. § 1680c(e)(1). In short, section 1680c(e)(1) allows for FTCA coverage to be extended to physicians with hospital privileges working in Indian Health Service facilities. 25 U.S.C.A. § 1680c.

It is undisputed that Dr. Alving was granted hospital privileges during the time he practiced at Chinle Hospital. (Doc. 46 at 7) However, the Government argues that the Plaintiffs' claims must fail because (i) Chinle Hospital's privileging process did not make Dr. Alving a federal employee, and (ii) Chinle Hospital was never authorized to include the FTCA Clause in the PWS. First, the plain terms of the Indian Health Service Medical Staff Credentialing and Privileging Guide require that locum tenens providers "should be credentialed and privileged by the same mechanisms as other providers when they practice inside the Indian Health Services facility." (Doc. 45-15 at 13) Furthermore, the Privileging Guide requires that "[e]vidence of medical liability insurance coverage should be documented on all practitioners in this category unless they are covered by the Federal Tort Claims Act." (Doc. 45-15 at 13) The Privileging Guide does not explicitly state that a physician that is granted hospital privileges is a federal employee, but 25 U.S.C. § 1680c(e)(1) states that privileged practitioners may be designated as federal employees. 25 U.S.C. § 1680c(e)(1). Not only does the PWS between Chinle Hospital and Dr. Alving state that Dr. Alving is covered by the FTCA, but this fact is also corroborated by the

"Letter of Confirmation" provided by MDA to Chinle Hospital on April 10, 2015 stating that Dr. Alving's malpractice insurance was "Covered under Federal Tort". (Doc. 45-10 at 2) The Government's argument that the PWS is not part of the privileging process is irrelevant because 25 U.S.C. § 1680c(e)(1), alongside the language in the PWS, confers federal employee status upon the physician granted hospital privileges, not just the PWS.

The Government does not set forth any persuasive reason for why the privileging process carried out at Chinle Hospital was insufficient to deem Dr. Alving a federal employee under 25 U.S.C. § 1680c(e)(1). And, even if Chinle Hospital was not authorized to include the FTCA Clause language in its PWS, the Court finds that the Government's actions and the representations it made to MDA and Dr. Alving are sufficient to deem him a federal employee pursuant to 25 U.S.C. § 1680c(e)(1). Chinle Hospital represented to MDA and Dr. Alving that his practice would be covered under the FTCA, and both MDA and Dr. Alving relied on Chinle Hospital's representation to its detriment. This point is only further emphasized by the fact that Chinle Hospital's director removed the FTCA Clause language from the PWS immediately following the Plaintiffs' commencement of this lawsuit. (Doc. 45-16 at 26–28) Therefore, the Court finds that the Plaintiffs are correct in asserting their claims pursuant to 28 U.S.C. § 1346 on the basis of Dr. Alving's role as a federal employee.

### B. Failure to State A Claim

In the Complaint, the Plaintiffs fail to identify any specific medical professional that is liable for their claims. Instead, the Complaint generally refers to "one or more physicians, nurses or other health care providers . . . in the emergency department at the Chinle Comprehensive Health Care Facility" or claims that on April 14, 2015, "one or more of the physicians, nurses, or other health care providers involved in his care failed to exercise that degree of care, skill and learning expected of reasonably prudent health care providers in the profession or class which they belong within the State of Arizona acting [in] the same or similar circumstances." (Doc. 8 at 4) In a letter addressed to defense counsel, the Plaintiffs clarified that they are seeking to hold the Government, as

the sole defending party to this case, liable for the actions of Dr. Alving. (Doc. 38-1 at 3) The Defendant argues that these vague claims are insufficient to satisfy the requisite pleading standard. (Doc. 38 at 15, stating that Plaintiffs have only made, "vague allegations of negligence by physicians and other providers without specifying anyone's roles".)

The Court finds that the Plaintiffs' failure to name specific healthcare providers in the Complaint or identify how these providers were negligent does nothing more than make conclusory statements. The Plaintiffs allege that the care provided in this case fell below the required standard of care without providing any facts to support their statement. For example, the Plaintiffs state that there was negligence due to a definitive airway not being established until 9:30 p.m., resulting in N.C.'s brain injury; however, the Complaint does not provide any facts as to who or what may have caused the delay or why any such delay fell below the applicable standard of care. Therefore, the Court finds that there are insufficient facts in the Complaint to put the Government on notice of how the unnamed healthcare providers were negligent. Only in the Plaintiffs' response to the Motion do they name Dr. Alving as the liable healthcare provider and argue that his actions fell below the requisite degree of care. (Doc. 45 at 1–3)

The Plaintiffs rely on conclusory statements in the Complaint, and the arguments made in response to the Motion on this issue are irrelevant to the Court's determination of whether the Plaintiffs have stated a claim that is plausible on its face. Therefore, because the Complaint fails to name a specific party and contains nothing more than conclusory statements, it fails to state a claim that is plausible on its face and the Motion will be granted pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 38) is **granted**, and this case shall be **dismissed without prejudice**; and

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** this case and enter judgment accordingly.

Dated this 12th day of June, 2019.

_____
Honorable Steven P. Logan
United States District Judge